# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO.)

| I.(a) PLAINTIFFS | DEFENDANTS |
|---|---|
| California Sportfishing Protection Alliance | Keller Canyon Landfill Company |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____<br>(EXCEPT IN U.S. PLAINTIFF CASES)<br><br>San Joaquin County | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>TRACT OF LAND INVOLVED. |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Michael R. Lozeau / Law Office of Michael R. Lozeau, 1516 Oak St., Ste. 216, Alameda  CA 94501  (see attachment) | ATTORNEYS (IF KNOWN)<br>Thomas Bruen / Law Offices of Thomas M. Bruen, 1990 North California Blvd., Ste. 940, Walnut Creek CA 94596 (see attachment) |

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF

(For diversity cases only)                                  AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transfered from Another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury Med Malpractice<br>☐ 365 Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br><br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt Relations<br>☐ 730 Labor/Mgmt Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl.Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (US Plaintiff or Defendant<br>☐ 871 IRS - Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Amer w/ disab.- Empl<br>☐ 446 Amer w/ disab.- Other | ☐ 510 Motion to Vacate Sentence Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition |

## VI. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Action seeks to enforce requirements of a federal permit issued under the Federal Water Pollution Control Act, 33 U.S.C. Sec. 1251 et seq.

## VII. REQUESTED IN COMPLAINT: ☐ CHECK IF THIS IS A CLASS ACTION   DEMAND $_____ CHECK YES only if demanded in complaint:

UNDER F.R.C.P. 23                                        JURY DEMAND:☐ YES ☒ NO

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)

(PLACE AND "X" IN ONE BOX ONLY)   ☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 3/3/2008 | Douglas J. Chermak |

MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Law Office of Michael R. Lozeau
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103 (fax)
E-mail: mrlozeau@lozeaulaw.com

ANDREW L. PACKARD (State Bar No. 168690)
MICHAEL P. LYNES (State Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

FILED

2008 MAR -3  PM 3: 59

RICH... ... ...KING
CLERK, ... ... COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

EDL

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KELLER CANYON LANDFILL COMPANY, a corporation.<br><br>Defendant. | Case No. C 08-01251<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 to 1387) |

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, by and through its

counsel, hereby alleges:

## I.    INTRODUCTION

1.    This complaint seeks relief for Defendant's discharges of polluted storm water

and non-storm water pollutants from Defendant's facility ("the Facility") into the waters of

the United States in violation of the Act and the State of California's "Waste Discharge

COMPLAINT

1

1    Requirements (WDRs) For Discharges of Storm Water Associated With Industrial Activities

2    Excluding Construction Activities," State Water Resources Control Board ("State Board")

3    Water Quality Order No. 91-13-DWQ, as amended by Water Quality Order No. 92-12-DWQ

4    and Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System

5    ("NPDES") Permit No. CAS000001, (hereinafter "the Order" or "Permit"). Defendant's

6    violations of the discharge, treatment technology, monitoring requirements, and other

7    procedural and substantive requirements of the Permit and the Act are ongoing and

8    continuous.

9        2.    The failure on the part of persons and facilities such as Defendant and its

10   industrial facility to comply with storm water requirements is recognized as a significant

11   cause of the continuing decline in water quality of the Suisun Bay, San Francisco Bay

12   ("Bay"), and other area receiving waters. The general consensus among regulatory agencies

13   and water quality specialists is that storm pollution amounts to a substantial portion of the

14   total pollution entering the aquatic environment each year. With every rainfall event,

15   millions of gallons of polluted rainwater originating from industries within the surrounding

16   area pour into the Bay.

17       3.    The continuing decline in water quality in the San Francisco Bay is a matter of

18   serious public concern. Data gathered by CalFed, a coalition of fifteen state and federal

19   agencies analyzing water allocation issues, has confirmed that the Bay is a heavily polluted

20   water body. The entire Bay and all of its major tributaries have been identified by the State

21   Board, the Regional Board, and EPA as impaired water bodies under Section 303(d) of the

22   Clean Water Act. 33 U.S.C. § 1313(d).

23   **II.    JURISDICTION AND VENUE**

24       4.    This is a civil suit brought under the citizen suit enforcement provisions of the

25   Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq*. (the "Clean Water Act" or

26   "the Act"). This Court has subject matter jurisdiction over the parties and the subject matter

27   of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28

28   U.S.C. § 1331 (an action arising under the laws of the United States). The relief requested is

COMPLAINT

**1** authorized pursuant to 28 U.S.C. §§ 2201-02 (power to issue declaratory relief in case of

**2** actual controversy and further necessary relief based on such a declaration); 33 U.S.C. §§

**3** 1319(b), 1365(a) (injunctive relief); and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

**4**     5.    On or about October 19, 2007, Plaintiff provided notice of Defendant's

**5** violations of the Act, and of its intention to file suit against Defendant, to the Defendant; the

**6** Administrator of the United States Environmental Protection Agency ("EPA"); the

**7** Administrator of EPA Region IX; the Executive Director of the State Water Resources

**8** Control Board ("State Board"); and to the Executive Officer of the Regional Water Quality

**9** Control Board, San Francisco Bay Region ("Regional Board"). A true and correct copy of

**10** CSPA's notice letter is attached as Exhibit A, and is incorporated by reference.

**11**     6.    More than sixty days have passed since notice was served on Defendant and

**12** the State and federal agencies. Plaintiff is informed and believes, and thereupon alleges, that

**13** neither the EPA nor the State of California has commenced or is diligently prosecuting a

**14** court action to redress the violations alleged in this complaint. This action's claim for civil

**15** penalties is not barred by any prior administrative penalty under Section 309(g) of the Act,

**16** 33 U.S.C. § 1319(g).

**17**     7.    Venue is proper in the Northern District of California pursuant to Section

**18** 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located

**19** within this judicial district. Pursuant to Local Rule 3-2(c), intradistrict venue is proper in

**20** Oakland, California because the sources of the violations are located within Contra Costa

**21** County, California.

**22** **III.    PARTIES**

**23**     8.    Plaintiff CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**24** ("CSPA") is a non-profit public benefit corporation organized under the laws of the State of

**25** California with its main office in Stockton, California. CSPA has approximately 2,000

**26** members who live, recreate and work in and around waters of the State of California,

**27** including Suisun Bay and San Francisco Bay. CSPA is dedicated to the preservation,

**28** protection, and defense of the environment, the wildlife and the natural resources of all

COMPLAINT

3

1 waters of California. To further these goals, CSPA actively seeks federal and state agency
2 implementation of the Act and other laws and, where necessary, directly initiates
3 enforcement actions on behalf of itself and its members.

4     9.    Members of CSPA reside in and around the Bay and enjoy using the Bay for
5 recreation and other activities. Members of CSPA use and enjoy the waters into which
6 Defendant has caused, is causing, and will continue to cause, pollutants to be discharged.
7 Members of CSPA use those areas to fish, sail, boat, kayak, swim, bird watch, view wildlife
8 and engage in scientific study including monitoring activities, among other things.
9 Defendant's discharges of pollutants threaten or impair each of those uses or contribute to
10 such threats and impairments. Thus, the interests of CSPA's members have been, are being,
11 and will continue to be adversely affected by Defendant's failure to comply with the Clean
12 Water Act and the Permit. The relief sought herein will redress the harms to Plaintiff caused
13 by Defendant's activities.

14     10.    Plaintiff is informed and believes, and thereupon alleges, that Defendant
15 KELLER CANYON LANDFILL COMPANY (hereinafter "Defendant" or "Keller Canyon
16 Landfill") is a corporation organized under the laws of California. Defendant Keller Canyon
17 Landfill operates a Class II Landfill in Pittsburg, California.

18 **IV.   STATUTORY BACKGROUND**

19     11.    Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any
20 pollutant into waters of the United States, unless such discharge is in compliance with
21 various enumerated sections of the Act. Among other things, Section 301(a) prohibits
22 discharges not authorized by, or in violation of, the terms of an NPDES permit issued
23 pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

24     12.    Section 402(p) of the Act establishes a framework for regulating municipal and
25 industrial storm water discharges under the NPDES program. 33 U.S.C. § 1342(p). States
26 with approved NPDES permit programs are authorized by Section 402(p) to regulate
27 industrial storm water discharges through individual permits issued to dischargers or through
28 the issuance of a single, statewide general permit applicable to all industrial storm water

COMPLAINT

4

1  dischargers. 33 U.S.C. § 1342(p).

2      13.    Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the

3  U.S. EPA has authorized California's State Board to issue NPDES permits including general

4  NPDES permits in California.

5      14.    The State Board elected to issue a statewide general permit for industrial storm

6  water discharges. The State Board issued the General Permit on or about November 19,

7  1991, modified the General Permit on or about September 17, 1992, and reissued the

8  General Permit on or about April 17, 1997, pursuant to Section 402(p) of the Clean Water

9  Act, 33 U.S.C. § 1342(p).

10     15.    In order to discharge storm water lawfully in California, industrial dischargers

11 must comply with the terms of the General Permit or have obtained and complied with an

12 individual NPDES permit. 33 U.S.C. § 1311(a).

13     16.    The General Permit contains several prohibitions. Effluent Limitation B(3) of

14 the General Permit requires dischargers to reduce or prevent pollutants in their storm water

15 discharges through implementation of the Best Available Technology Economically

16 Achievable ("BAT") for toxic and nonconventional pollutants and the Best Conventional

17 Pollutant Control Technology ("BCT") for conventional pollutants. BAT and BCT include

18 both nonstructural and structural measures. General Permit, Section A(8). Discharge

19 Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-

20 storm water discharges that cause or threaten to cause pollution, contamination, or nuisance.

21 Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges to

22 any surface or ground water that adversely impact human health or the environment.

23 Receiving Water Limitation C(2) of the General Permit prohibits storm water discharges that

24 cause or contribute to an exceedance of any applicable water quality standards contained in a

25 Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

26     17.    EPA has established Parameter Benchmark Values as guidelines for

27 determining whether a facility discharging industrial storm water has implemented the

28 requisite BAT and BCT. 65 Fed. Reg. 64746, 64767 (Oct. 30, 2000). EPA has established

COMPLAINT

5

**1** Parameter Benchmark Values for the following parameters, among others: total suspended

**2** solids – 100 mg/L; pH – 6.0 – 9.0; iron – 1.0 mg/L; chemical oxygen demand – 120 mg/L.

**3** The California State Water Resources Control Board has proposed a Benchmark Value for

**4** electrical conductance of 200 μmhos/cm.

**5**     18.    In addition to absolute prohibitions, the General Permit contains a variety of

**6** substantive and procedural requirements that dischargers must meet. Facilities discharging,

**7** or having the potential to discharge, storm water associated with industrial activity that have

**8** not obtained an individual NPDES permit must apply for coverage under the State's General

**9** Permit by filing a Notice of Intent To Comply ("NOI"). The General Permit requires

**10** existing dischargers to have filed their NOIs before March 30, 1992.

**11**     19.    Dischargers must develop and implement a Storm Water Pollution Prevention

**12** Plan ("SWPPP"). The SWPP must describe storm water control equipment and measures

**13** that comply with the BAT and BCT standards. The General Permit requires that an initial

**14** SWPPP have been developed and implemented before October 1, 1992. The SWPPP must,

**15** among other requirements, identify and evaluate sources of pollutants associated with

**16** industrial activities that may affect the quality of storm and non-storm water discharges from

**17** the facility and identify and implement site-specific best management practices ("BMPs") to

**18** reduce or prevent pollutants associated with industrial activities in storm water and

**19** authorized non-storm water discharges (Section A(2)). The SWPPP's BMPs must

**20** implement BAT and BCT (Section B(3)). The SWPPP must include: a description of

**21** individuals and their responsibilities for developing and implementing the SWPPP (Section

**22** A(3)); a site map showing the facility boundaries, storm water drainage areas with flow

**23** pattern and nearby water bodies, the location of the storm water collection, conveyance and

**24** discharge system, structural control measures, impervious areas, areas of actual and potential

**25** pollutant contact, and areas of industrial activity (Section A(4)); a list of significant materials

**26** handled and stored at the site (Section A(5)); a description of potential pollutant sources

**27** including industrial processes, material handling and storage areas, dust and particulate

**28** generating activities, and a description of significant spills and leaks, a list of all non-storm

COMPLAINT

6

1 water discharges and their sources, and a description of locations where soil erosion may

2 occur (Section A(6)). The SWPPP must include an assessment of potential pollutant sources

3 at the Facility and a description of the BMPs to be implemented at the Facility that will

4 reduce or prevent pollutants in storm water discharges and authorized non-storm water

5 discharges, including structural BMPs where non-structural BMPs are not effective (Section

6 A(7), (8)). The SWPPP must be evaluated to ensure effectiveness and must be revised where

7 necessary (Section A(9),(10)).

8    20.    Section C(11)(d) of the General Permit's Standard Provisions requires

9 dischargers to report any noncompliance to the Regional Board. *See also* Section E(6).

10 Lastly, Section A(9) of the General Permit requires an annual evaluation of storm water

11 controls including the preparation of an evaluation report and implementation of any

12 additional measures in the SWPPP to respond to the monitoring results and other inspection

13 activities.

14    21.    The General Permit requires dischargers commencing industrial activities

15 before October 1, 1992 to develop and implement an adequate written monitoring and

16 reporting program no later than October 1, 1992. Existing facilities covered under the

17 General Permit had to implement all necessary revisions to their monitoring programs no

18 later than August 1, 1997.

19    22.    As part of their monitoring program, dischargers must identify all storm water

20 discharge locations that produce a significant storm water discharge, evaluate the

21 effectiveness of BMPs in reducing pollutant loading, and evaluate whether pollution control

22 measures set out in the SWPPP are adequate and properly implemented. Dischargers must

23 conduct visual observations of these discharge locations for at least one storm per month

24 during the wet season (October through May) and record their findings in their Annual

25 Report. Dischargers must also collect and analyze storm water samples from at least two

26 storms per year. Section B(5)(a) of the General Permit requires that dischargers "shall

27 collect storm water samples during the first hour of discharge from (1) the first storm event

28 of the wet season, and (2) at least one other storm event in the wet season. All storm water

COMPLAINT

7

1   discharge locations shall be sampled." Section B(5)(c)(i)-(iii) requires dischargers to sample

2   and analyze during the wet season for basic parameters, such as pH, total suspended solids

3   ("TSS"), electrical conductance, and total organic content ("TOC") or oil and grease

4   ("O&G"), certain industry-specific parameters, and toxic chemicals and other pollutants

5   likely to be in the storm water discharged from the facility. Dischargers must also conduct

6   dry season visual observations to identify sources of non-storm water pollution.

7        23.    Section B(14) of the General Permit requires dischargers to submit an annual

8   report by July 1 of each year to the executive officer of the relevant Regional Board. The

9   annual report must be signed and certified by an appropriate corporate officer. Sections

10   B(14), C(9), (10). Section A(9)(d) of the General Permit requires the discharger to include

11   in their annual report an evaluation of their storm water controls, including certifying

12   compliance with the General Permit. *See also* Sections C(9) and (10) and B(14).

13        24.    Section 505(a)(1) and Section 505(f) of the Act provide for citizen

14   enforcement actions against any "person," including individuals, corporations, or

15   partnerships, for violations of NPDES permit requirements. 33 U.S.C. §§1365(a)(1) and (f),

16   § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. §

17   1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to

18   $27,500 per day (violations from January 30, 1997 through March 15, 2004) and $32,500

19   per day (violations after March 15, 2004) pursuant to Sections 309(d) and 505 of the Act, 33

20   U.S.C. §§ 1319(d), 1365 and 40 C.F.R. §§ 19.1 - 19.4.

21        25.    The Regional Board has established water quality standards for the San

22   Francisco Bay in the Water Quality Control Plan for the San Francisco Bay Basin, generally

23   referred to as the Basin Plan.

24        26.    The Basin Plan provides that "[w]aters shall not contain suspended material in

25   concentrations that cause nuisance or adversely affect beneficial uses" and that "[w]aters

26   shall not contain biostimulatory substances in concentrations that promote aquatic growths to

27   the extent that such growths cause nuisance or adversely affect beneficial uses."

28        27.    The Basin Plan limits floating material, stating that "[w]aters shall not contain

COMPLAINT

8

1  floating material, including solids, liquids, foams, and scum, in concentrations that cause
2  nuisance or adversely affect beneficial uses."

3  28.   The Basin Plan dictates that "[w]aters shall be free of changes in turbidity that
4  cause nuisance or adversely affect beneficial uses."

5  29.   The Basin Plan provides that "[w]aters shall not contain oils, greases, waxes,
6  or other materials in concentrations that result in a visible film or coating on the surface of
7  the water or on objects in the water, that cause nuisance, or that otherwise adversely affect
8  beneficial uses."

9  30.   The Basin Plan provides that "[t]he pH shall not be depressed below 6.5 nor
10  raised above 8.5."

11  31.   The Basin Plan establishes a dissolved oxygen standard of 7.0 mg/L for waters
12  of San Francisco Bay upstream from the Carquinez Bridge.

13  **V.   STATEMENT OF FACTS**

14  32.   Defendant Keller Canyon Landfill operates a Class II Landfill at 901 Bailey
15  Road in Pittsburg, California.  The Facility is engaged in the disposal of municipal solid
16  waste, non-liquid industrial waste, contaminated soils, ash, grit and sludges.  The Facility
17  falls within the Standard Industrial Classification ("SIC") Code 4953.  The Facility covers
18  about 2,600 acres of land with 244 acres permitted for disposal, the large majority of which
19  is unpaved.  On information and belief, Plaintiff alleges that there are several buildings
20  located on the property.  On information and belief, Plaintiff alleges that disposal is
21  conducted outside of these buildings.

22  33.   Defendant channels and collects storm water falling on the Facility though five
23  storm drains.  Each storm drain collects storm water runoff from a particular area of the
24  Facility.  These drains discharge the storm water to either the City of Pittsburg storm drain
25  system or to Lawlor Creek.  Both the City of Pittsburg storm drain system and Lawlor Creek
26  flow into Suisun Bay and ultimately to the San Francisco Bay.

27  34.   The industrial activities at the site include the processing, storage, and disposal
28  of a variety of materials including municipal solid waste, dirt, mud, non-liquid industrial

COMPLAINT                                                    9

1    waste, contaminated soils, ash, grit and sludges. It also includes the storage and maintenance

2    of trucks, tractors, and other machinery used to transfer and dispose of these materials.

3         35.    Significant activities at the site take place outside and are exposed to rainfall.

4    These activities include the storage and disposal of the numerous types of materials handled

5    by the Facility; the storage and use of vehicles and equipment for materials handling; and the

6    storage, handling, and disposal of waste materials. Loading and delivery of materials occurs

7    outside. Trucks enter and exit the Facility directly from and to a public road. Trucks,

8    tractors, and other machinery are the primary means of moving materials around the unpaved

9    areas of the Facility. The Facility's exposed areas contain large piles of a variety of

10   materials. Plaintiff alleges on information and belief that many of the exposed surfaces at

11   the Facility are unpaved and sediment and other materials are disturbed as a result of the

12   storage and disposal processes. These areas are exposed to storm water and storm flows due

13   to the lack of overhead coverage, berms and other storm water controls.

14        36.    Industrial machinery, heavy equipment and vehicles, including trucks and

15   tractors are operated and stored at the Facility in areas exposed to storm water flows.

16   Plaintiff is informed and believes, and thereupon alleges, that such machinery and equipment

17   leak contaminants such as oil, grease, diesel fuel, anti-freeze and hydraulic fluids that are

18   exposed to storm water flows, and that such machinery and equipment track sediment and

19   other contaminants throughout the Facility.

20        37.    Plaintiff is informed and believes, and thereupon alleges that the storm water

21   flows easily over the surface of the Facility, collecting suspended sediment, dirt, oils, grease,

22   and other pollutants as it flows toward the storm water drains. Storm water and any

23   pollutants contained in that storm water entering the drains flows directly to either the City

24   of Pittsburg's storm drain system or to Lawlor Creek.

25        38.    The management practices at the Facility are wholly inadequate to prevent the

26   sources of contamination described above from causing the discharge of pollutants to waters

27   of the United States. The Facility lacks sufficient structural controls such as grading,

28   berming, roofing, containment, or drainage structures to prevent rainfall and storm water

COMPLAINT

1   flows from coming into contact with these and other exposed sources of contaminants. The
2   Facility lacks sufficient structural controls to prevent the discharge of water once
3   contaminated. The Facility lacks adequate storm water pollution treatment technologies to
4   treat storm water once contaminated.

5         39.     Since at least December 15, 2002, Defendant has taken samples or arranged for
6   samples to be taken of storm water discharges at the Facility. The sample results were
7   reported in the Facility's annual reports submitted to the Regional Board. Defendant Keller
8   Canyon Landfill certified each of those annual reports pursuant to Sections A and C of the
9   General Permit.

10        40.     Since at least December 15, 2002, the Facility has detected total suspended
11  solids, chemical oxygen demand, and electrical conductance in storm water discharged from
12  the Facility. Levels of these pollutants detected in the Facility's storm water have been in
13  excess of EPA's numeric parameter benchmark values. Levels of these pollutants detected
14  in the Facility's storm water have been in excess of water quality standards established in the
15  Basin Plan.

16        41.     The levels of total suspended solids in storm water detected by the Facility
17  have exceeded the benchmark value for total suspended solids of 100 mg/L established by
18  EPA. For example, on February 9, 2007, the level of suspended solids measured by
19  Defendant in the Facility's discharged storm water was 5,900 mg/L. That level of total
20  suspended solids is 59 times the benchmark value for suspended solids established by EPA.

21        42.     The levels of chemical oxygen demand in storm water detected by the Facility
22  have exceeded the benchmark value for chemical oxygen demand of 120 mg/L established
23  by EPA. For example, on February 9, 2007, the level of chemical oxygen demand measured
24  by Defendant in the Facility's discharged storm water was 470 mg/L. That level of chemical
25  oxygen demand is nearly four times the benchmark value for chemical oxygen demand
26  established by EPA.

27        43.     The electrical conductance levels detected by the Facility in its storm water
28  have been greater than the numeric water quality standards applicable to electrical

COMPLAINT
                                              11

1    conductance in California.  The electrical conductance levels detected by the Facility in its

2    storm water have been greater than the benchmark value of 200 μmho/cm proposed by the

3    State Board.  For example, on March 6, 2006, the electrical conductance level measured by

4    Defendant in the Facility's discharged storm water was 2400 μmho/cm.  That electrical

5    conductance level is twelve times the State Board's proposed benchmark value.

6        44.    On information and belief, Plaintiff alleges that Defendants have failed to

7    analyze its storm water samples for iron as required by the Table D of the General Permit

8    since at least December 15, 2002.

9        45.    On information and belief, Plaintiff alleges that since at least December 15,

10   2002, Defendant has failed to implement BAT and BCT at the Facility for its discharges of

11   suspended solids, chemical oxygen demands, electrical conductance, and other pollutants.

12   Section B(3) of the General Permit requires that Defendant implement BAT for toxic and

13   nonconventional pollutants and BCT for conventional pollutants by no later than October 1,

14   1992.  As of the date of this Complaint, Defendant has failed to implement BAT and BCT.

15       46.    On information and belief, Plaintiff alleges that since at least October 1, 1992,

16   Defendant has failed to implement an adequate Storm Water Pollution Prevention Plan

17   ("SWPPP") for the Facility.  Plaintiff is informed and believes, and thereupon alleges, that the

18   SWPPP prepared for the Facility does not set forth site-specific best management practices

19   for the Facility that are consistent with BAT or BCT for the Facility.  Plaintiff is informed

20   and believes, and thereupon alleges, that the SWPPP prepared for the Facility does not

21   include an assessment of potential pollutant sources, structural pollutant control measures

22   employed by the Defendant, a list of actual and potential areas of pollutant contact, or a

23   description of best management practices to be implemented at the Facility to reduce

24   pollutant discharges.  According to information available to CSPA, Defendant's SWPPP has

25   not been evaluated to ensure effectiveness and revised where necessary to further reduce

26   pollutant discharges.  Plaintiff is informed and believes, and thereupon alleges, that the

27   SWPPP does not include each of the mandatory elements required by Section A of the

28   General Permit.  Plaintiff is informed and believes, and thereupon alleges, that the SWPPP

COMPLAINT
                                                              12

1    does not contain an accurate map that clearly delineates the boundaries of the Facility.

2    47.    Information available to CSPA indicates that as a result of these practices,

3    storm water containing excessive pollutants is being discharged during rain events from the

4    Facility directly to channels that flow into Lawlor Creek and Suisun Bay. Suisun Bay is a

5    part of San Francisco Bay.

6    48.    The San Francisco Bay has been identified by the Regional Board, State Board

7    and federal EPA as impaired for several pollutants, including mercury and unknown toxicity.

8    49.    Plaintiff is informed and believes, and thereupon alleges, that pollutants

9    discharged by the Facility in its storm water are contributing to violations of water quality

10    standards that apply to the San Francisco Bay and its tributaries. Plaintiff is informed and

11    believes, and thereupon alleges, that Defendant is discharging suspended solids, chemical

12    oxygen demand, pH and other un-monitored pollutants that are causing or contributing to

13    exceedances of applicable water quality standards. Defendant is contributing to violations of

14    water quality standards including, but not limited to, the narrative water quality standard for

15    toxicity and turbidity and the numeric water quality standard for electrical conductance.

16    50.    Plaintiff is informed and believes, and thereupon alleges, that, Defendant has

17    failed and continues to fail to alter the Facility's SWPPP and site-specific BMPs consistent

18    with Section A(9) of the General Permit.

19    51.    Plaintiff is informed and believes that Defendant failed to submit to the

20    Regional Board a true and complete annual report certifying compliance with the General

21    Permit since at least December 15, 2002. Pursuant to Sections A(9)(d), B(14), and C(9),

22    (10) of the General Permit, Defendant must submit an annual report, that is signed and

23    certified by the appropriate corporate officer, outlining the Facility's storm water controls

24    and certifying compliance with the General Permit. Plaintiff is informed and believes, and

25    thereupon alleges, that Defendant has signed incomplete annual reports that purported to

26    comply with the General Permit when there was significant noncompliance at the Facility.

27    52.    Information available to Plaintiff indicates that Defendant has not fulfilled the

28    requirements set forth in the General Permit for discharges from the Facility due to the

COMPLAINT
13

1    continued discharge of polluted storm water. Plaintiff is informed and believes, and

2    thereupon alleges, that all of the violations alleged in this Complaint are ongoing and

3    continuing.

4    **VI.    CLAIMS FOR RELIEF**

5                          **FIRST CAUSE OF ACTION**
              **Failure to Develop and Implement the Best Available and**
6                    **Best Conventional Treatment Technologies**
           **(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**
7
         53.    Plaintiff realleges and incorporate Paragraphs 1-52, as if fully set forth herein.
8
         54.    The General Permit's SWPPP requirements and Effluent Limitation B(3)
9
10   require dischargers to reduce or prevent pollutants in their storm water discharges through

11   implementation of BAT for toxic and nonconventional pollutants and BCT for conventional

12   pollutants. Defendant has failed to implement BAT and BCT at the Facility for its

13   discharges of suspended solids, chemical oxygen demand, electrical conductance, and other

14   un-monitored pollutants in violation of Effluent Limitation B(3) of the General Permit.

         55.    Each day since October 1, 1992 that Defendant has failed to develop and
15
16   implement BAT and BCT in violation of the General Permit is a separate and distinct violation

17   of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

         56.    Defendant has been in violation of the BAT/BCT requirements every day since
18
19   October 1, 1992. Defendant continues to be in violation of the BAT/BCT requirements each

20   day that it fails to develop and fully implement BAT and BCT at the Facility.

21                         **SECOND CAUSE OF ACTION**
                 **Failure to Prepare, Implement, Review, and Update**
22                  **an Adequate Storm Water Pollution Prevention Plan**
           **(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

23       57.    Plaintiff realleges and incorporate Paragraphs 1-56, as if fully set forth herein.

24       58.    Section A and Provision E of the General Permit requires dischargers of storm

25   water associated with industrial activity to have developed and be implementing an adequate

26   SWPPP no later than October 1, 1992.

27       59.    Defendant has failed to develop and implement an adequate SWPPP for the

28   Facility. Defendant's ongoing failure to develop and implement an adequate SWPPP for the

COMPLAINT
                                          14

1 Facility is evidenced by, *inter alia*, Defendant's outdoor storage of various materials, without

2 appropriate best management practices; the continued exposure of significant quantities of

3 various materials to storm water flows; the continued exposure and tracking of waste resulting

4 from the operation or maintenance of vehicles at the site; the failure to either treat storm water

5 prior to discharge or to implement effective containment practices; and the continued

6 discharge of storm water pollutants from the Facility at levels in excess of EPA benchmark

7 values.

8    60.    Defendant has failed to update the Facility's SWPPP in response to the

9 analytical results of the Facility's storm water monitoring.

10    61.    Each day since October 1, 1992 that Defendant has failed to develop, implement

11 and update an adequate SWPPP for the Facility is a separate and distinct violation of Section

12 301(a) of the Act, 33 U.S.C. § 1311(a).

13    62.    Defendant has been in violation of the SWPPP requirements every day since

14 October 1, 1992. Defendant continues to be in violation of the SWPPP requirements each day

15 that it fails to develop and fully implement an adequate SWPPP for the Facility.

16                        **THIRD CAUSE OF ACTION**
   **Failure to Develop and Implement an Adequate Monitoring and Reporting Program**
17      **(Violation of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

18    63.    Plaintiff re-alleges and incorporates Paragraphs 1-62, inclusive, as if fully set

19 forth herein.

20    64.    Section B of the General Permit requires dischargers of storm water associated

21 with industrial activity to have developed and be implementing a monitoring and reporting

22 program (including, *inter alia*, sampling and analysis of discharges) no later than October 1,

23 1992.

24    65.    Defendant has failed to develop and implement an adequate monitoring and

25 reporting program for the Facility. Defendant's ongoing failure to develop and implement

26 an adequate monitoring and reporting program are evidenced by, *inter alia*, their failure to

27 monitor storm water discharges for iron.

28    66.    Each day since October 1, 1992 that Defendant has failed to develop and

COMPLAINT                                    15

1 implement an adequate monitoring and reporting program for the Facility in violation of the

2 General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. §

3 1311(a). The absence of requisite monitoring and analytical results are ongoing and

4 continuous violations of the Act.

5
### FOURTH CAUSE OF ACTION
**Discharges of Contaminated Storm Water
in Violation of Permit Conditions and the Act
(Violations of 33 U.S.C. §§ 1311(a), 1342)**

6

7

8 67.    Plaintiff re-alleges and incorporates Paragraphs 1-66, inclusive, as if fully set forth herein.

9 68.    Discharge Prohibition A(2) of the General Permit requires that storm water

10 discharges and authorized non-storm water discharges shall not cause or threaten to cause

11 pollution, contamination, or nuisance.  Receiving Water Limitations C(1) and C(2) of the

12 General Permit require that storm water discharges and authorized non-storm water discharges

13 shall not adversely impact human health or the environment, and shall not cause or contribute

14 to a violation of any water quality standards contained in a Statewide Water Quality Control

15 Plan or the applicable Regional Board's Basin Plan.

16 69.    Plaintiff is informed and believes, and thereupon alleges, that since at least

17 December 15, 2002, Defendant has been discharging polluted storm water from the Facility

18 directly to channels or storm drains that flow into the Suisun Bay and the San Francisco Bay,

19 in violation of the Discharge Prohibition A(2) of the General Permit.

20 70.    During every rain event, rainwater flows freely over exposed materials, waste

21 products, and other accumulated pollutants at the Facility, becoming contaminated with these

22 pollutants. The rainwater then flows untreated from the Facility into channels or storm drains.

23 This contaminated storm water flows into Lawlor Creek and/or Suisun Bay, a part of the San

24 Francisco Bay.

25 71.    Plaintiff is informed and believes, and thereupon alleges, that these discharges of

26 contaminated storm water are causing pollution and contamination of the waters of the United

27 States in violation of Discharge Prohibition A(2) of the General Permit.

28

COMPLAINT
                                                    16

72.   Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are adversely affecting human health and the environment in violation of Receiving Water Limitation C(1) of the General Permit.

73.   Plaintiff is informed and believes, and thereupon alleges, that these discharges of contaminated storm water are contributing to the violation of the applicable water quality standards in a Statewide Water Quality Control Plan and/or the applicable Regional Board's Basin Plan in violation of Receiving Water Limitation C(2) of the General Permit.

74.   Every day since at least December 15, 2002, that Defendant has discharged and continues to discharge polluted storm water from the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  These violations are ongoing and continuous.

### FIFTH CAUSE OF ACTION
#### False Certification of Compliance In Annual Report
**(Violations of Permit Conditions and the Act, 33 U.S.C. §§ 1311, 1342)**

75.   Plaintiff realleges and incorporate Paragraphs 1-74, as if fully set forth herein.

76.   Defendant has falsely certified compliance with the General Permit in each of the annual reports submitted to the Regional Board since at least June 2003.

77.   Each day since at least June 27, 2003 that Defendant has falsely certified compliance with the General Permit is a separate and distinct violation of the General Permit and Section 301(a) of the Act, 33 U.S.C. § 1311(a).  Defendant continues to be in violation of the General Permit's certification requirement each day that it maintains its false certification of its compliance with the General Permit.

## VII.   RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

a.   Declare Defendant to have violated and to be in violation of the Act as alleged herein;

b.   Enjoin Defendant from discharging polluted storm water from the Facility unless authorized by the Permit;

c.   Enjoin Defendant from further violating the substantive and procedural

COMPLAINT

1 | requirements of the Permit;

2 |      d.  Order Defendant to immediately implement storm water pollution control

3 | and treatment technologies and measures that are equivalent to BAT or BCT and prevent

4 | pollutants in the Facility's storm water from contributing to violations of any water quality

5 | standards;

6 |      e.  Order Defendant to comply with the Permit's monitoring and reporting

7 | requirements, including ordering supplemental monitoring to compensate for past monitoring

8 | violations;

9 |      f.  Order Defendant to prepare a SWPPP consistent with the Permit's

10 | requirements and implement procedures to regularly review and update the SWPPP;

11 |      g.  Order Defendant to provide Plaintiff with reports documenting the quality

12 | and quantity of their discharges to waters of the United States and their efforts to comply with

13 | the Act and the Court's orders;

14 |      h.  Order Defendant to pay civil penalties of $27,500 per day per violation for

15 | all violations occurring before March 15, 2004, and $32,500 per day per violation for all

16 | violations occurring after August 28, 2002, for each violation of the Act pursuant to Sections

17 | 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 - 19.4;

18 |      i.  Order Defendant to take appropriate actions to restore the quality of waters

19 | impaired or adversely affected by their activities;

20 |      j.  Award Plaintiff's costs (including reasonable investigative, attorney, witness,

21 | compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and,

22 |      k.  Award any such other and further relief as this Court may deem appropriate.

23 |

24 | Dated: March 3, 2008        Respectfully submitted,

25 |                LAW OFFICE OF MICHAEL R. LOZEAU

26 | By: _____

27 |                Douglas J. Chermak
                  Attorney for Plaintiff

28 |                CALIFORNIA SPORTFISHING PROTECTION
                  ALLIANCE

COMPLAINT

# EXHIBIT A

# California Sportfishing Protection Alliance

*"An Advocate for Fisheries, Habitat and Water Quality"*
3536 Rainier Avenue, Stockton, CA 95204
Tel: 209-464-5067, Fax: 209-464-1028, E: deltakeep@aol.com

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

October 18, 2007

Kevin Chiapello, General Manager
Michael Caprio, District Manager
Keller Canyon Landfill Company
901 Bailey Road
Pittsburg, CA 94565

**Re:    Notice of Violations and Intent to File Suit Under the Federal Water
        Pollution Control Act**

Dear Messrs. Caprio and Chiapello:

        I am writing on behalf of the California Sportfishing Protection Alliance ("CSPA") in
regard to violations of the Clean Water Act ("Act") that CSPA believes are occurring at the
Keller Canyon Landfill Company located at 901 Bailey Road in Pittsburg, California ("Keller
Canyon Landfill" or "Facility").   CSPA is a non-profit public benefit corporation dedicated to
the preservation, protection, and defense of the environment, wildlife, and natural resources of
the Sacramento-San Joaquin River Delta ("the Delta"), San Francisco Bay, Suisun Bay, and
other California waters. This letter is being sent to you as the responsible owners, officers, or
operators of the Keller Canyon Landfill (all recipients are hereinafter collectively referred to as
"Keller Canyon Landfill").

        This letter addresses Keller Canyon Landfill's unlawful discharges of pollutants from the
Facility to waters of the United States. The Facility discharges storm water associated with its
industrial activity to the City of Pittsburg's municipal storm drain system and Lawlor Creek,
which in turn flows into Suisun Bay and the San Francisco Bay. The Facility is discharging
storm water pursuant to National Pollutant Discharge Elimination System ("NPDES") Permit
No. CA S000001, State Water Resources Control Board ("State Board"), Order No. 92-12-DWQ
as amended by Order No. 97-03-DWQ (hereinafter "General Permit"). The WDID identification
number for the Facility listed on documents submitted to the State Board and California
Regional Water Quality Control Board ("Regional Board") is 207S006887. The Facility is
violating the substantive and procedural requirements of the General Permit.

        Section 505(b) of the Clean Water Act requires a citizen to give notice of intent to file
suit sixty (60) days prior to the initiation of a civil action under Section 505(a) of the Act (33

Keller Canyon Landfill
October 18, 2007
Page 2 of 16

U.S.C. § 1365(a)). Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the State in which the violations occur.

As required by the Clean Water Act, this Notice of Violations and Intent to File Suit provides notice of the violations that have occurred, and continue to occur, at the Facility. Consequently, Keller Canyon Landfill is hereby placed on formal notice by CSPA that, after the expiration of sixty days from the date of this Notice of Violations and Intent to Sue, CSPA intends to file suit in federal court against Keller Canyon Landfill, Norm Christensen, and Kevin Chiapello under Section 505(a) of the Clean Water Act (33 U.S.C. § 1365(a)), for violations of the Clean Water Act and the Order. These violations are described more extensively below.

## I.    Background.

On or about April 27, 1992, Keller Canyon Landfill filed its Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI"). Keller Canyon Landfill certified that the Facility is classified under SIC code 4953 ("solid waste landfill"). According to Keller Canyon Landfill's NOI, the Facility collects and discharges storm water from its 375 acre industrial site to either the City of Pittsburg storm drain system or Lawlor Creek, which then flows into Suisun Bay and the western edge of the Delta. The Facility's annual storm water reports indicate that it discharges polluted storm water through five storm water outfalls.

The San Francisco Bay Regional Water Quality Control Board (the "Regional Board" or "Board") has established water quality standards for the San Francisco Bay, including Lawlor Creek and Suisun Bay, in the "Water Quality Control Plan for the San Francisco Bay Basin," generally referred to as the Basin Plan. *See* http://www.swrcb.ca.gov/rwqcb2/basinplan.htm. The beneficial uses of the Bay region's waters, including Suisun Bay, include among others contact and non-contact recreation, endangered and threatened species habitat, shellfish harvesting, and fish spawning. The non-contact recreation use is defined as "[u]ses of water for recreational activities involving proximity to water, but not normally involving contact with water where water ingestion is reasonably possible. These uses include, but are not limited to, picnicking, sunbathing, hiking, . . ., camping, boating, . . ., sightseeing, or aesthetic enjoyment in conjunction with the above activities." Basin Plan at 2.1.16. Visible pollution, including visible sheens and cloudy or muddy water from industrial areas, impairs people's use of Suisin Bay and Lawlor Creek for contact and noncontact water recreation.

The Regional Board has established water quality standards for Suisin Bay and its tributaries. The Basin Plan includes a narrative toxicity standard which states that "[a]ll waters shall be maintained free of toxic substances in concentrations that are lethal to or that produce significant alterations in population or community ecology or receiving water biota." *Id.* at 3.3.8. The Basin Plan establishes a dissolved oxygen standard of 7.0 mg/L for waters upstream from the Carquinez Bridge. *Id.* at 3.3.5. It limits floating material, stating that "[w]aters shall not contain floating material, including solids, liquids, foams, and scum, in concentrations that cause nuisance or adversely affect beneficial uses." *Id.* at 3.3.6. It provides that "[w]aters shall be free of changes in turbidity that cause nuisance or adversely affect beneficial uses. Increases

Notice of Violations and Intent to File Suit

Keller Canyon Landfill
October 18, 2007
Page 3 of 16

from normal background light penetration or turbidity relatable to waste discharge shall not be greater than 10 percent in areas where natural turbidity is greater than 50 NTU." *Id.* 3.3.19.

The U.S. Environmental Protection Agency ("EPA") has published benchmark levels as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT"). The EPA has established the following benchmarks for pollutants discharged by Keller Canyon Landfill: pH – 6.0-9.0 units; total suspended solids ("TSS") – 100 mg/L; chemical oxygen demand ("COD") – 120 mg/L; and iron – 1 mg/L. The State Board also has proposed adding a benchmark level to the General Permit for specific conductance (200 µmho/cm).

## II.  Alleged Violations of the NPDES Permit.

### A.  *Discharges in Violation of the Permit.*

Keller Canyon Landfill has violated and continues to violate the terms and conditions of the General Permit. Section 402(p) of the Act prohibits the discharge of storm water associated with industrial activities, except as permitted under an NPDES permit (33 U.S.C. § 1342) such as the General Permit. The General Permit prohibits any discharges of storm water associated with industrial activities that have not been subjected to BAT or BCT. Effluent Limitation B(3) of the General Permit requires dischargers to reduce or prevent pollutants in their storm water discharges through implementation of BAT for toxic and nonconventional pollutants and BCT for conventional pollutants. BAT and BCT include both nonstructural and structural measures. General Permit, Section A(8). Conventional pollutants are TSS, O&G, pH, biochemical oxygen demand ("BOD"), and fecal coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. *Id.*; 40 C.F.R. § 401.15.

In addition, Discharge Prohibition A(1) of the General Permit prohibits the discharge of materials other than storm water (defined as non-storm water discharges) that discharge either directly or indirectly to waters of the United States. Discharge Prohibition A(2) of the General Permit prohibits storm water discharges and authorized non-storm water discharges that cause or threaten to cause pollution, contamination or nuisance.

Receiving Water Limitation C(1) of the General Permit prohibits storm water discharges and authorized non-storm water discharges to surface or groundwater that adversely impact human health or the environment. Receiving Water Limitation C(2) of the General Permit also prohibits storm water discharges and authorized non-storm water discharges that cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan.

Keller Canyon Landfill has discharged and continues to discharge storm water with unacceptable levels of TSS, specific conductivity, COD and other pollutants in violation of the General Permit. Keller Canyon Landfill's sampling and analysis results reported to the Regional

Notice of Violations and Intent to File Suit

Keller Canyon Landfill
October 18, 2007
Page 4 of 16

Board confirm discharges of specific pollutants and materials other than storm water in violation
of the Permit provisions listed above. Self-monitoring reports under the Permit are deemed
"conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813
F.2d 1480, 1493 (9th Cir. 1988).

The following discharges of pollutants from the Facility have violated Discharge
Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) and are evidence of
ongoing violations of Effluent Limitation B(3) of the General Industrial Storm Water Permit.

| Date | Parameter | Concentration | Benchmark | Outfall (as identified by the Facility) |
|------|-----------|---------------|-----------|------------------------------------------|
| 2/9/2007 | Total Suspended Solids | 5900 mg/L | 100 mg/L | Sedimentation Pond Spillway |
| 2/9/2007 | Specific Conductivity | 480 μmho/cm | 200 μmho/cm (proposed) | Sedimentation Pond Spillway |
| 2/9/2007 | Chemical Oxygen Demand | 470 mg/L | 120 mg/L | Sedimentation Pond Spillway |
| 2/9/2007 | Total Suspended Solids | 890 mg/L | 100 mg/L | V-Ditch East |
| 2/9/2007 | Chemical Oxygen Demand | 330 mg/L | 120 mg/L | V-Ditch East |
| 2/9/2007 | Total Suspended Solids | 500 mg/L | 100 mg/L | Lower Lawler [sic] |
| 2/9/2007 | Specific Conductivity | 970 μmho/cm | 200 μmho/cm (proposed) | Lower Lawler [sic] |
| 2/9/2007 | Chemical Oxygen Demand | 160 mg/L | 120 mg/L | Lower Lawler [sic] |
| 2/9/2007 | Total Suspended Solids | 2800 mg/L | 100 mg/L | V-Ditch West |
| 2/9/2007 | Specific Conductivity | 300 μmho/cm | 200 μmho/cm (proposed) | V-Ditch West |
| 2/9/2007 | Chemical Oxygen Demand | 410 mg/L | 120 mg/L | V-Ditch West |
| 2/9/2007 | Total Suspended Solids | 330 mg/L | 100 mg/L | Upper Lawler [sic] |
| 2/9/2007 | Specific Conductivity | 1600 μmho/cm | 200 μmho/cm (proposed) | Upper Lawler [sic] |
| 3/6/2006 | Total Suspended Solids | 700 mg/L | 100 mg/L | Lower Lawler [sic] |
| 3/6/2006 | Specific Conductivity | 940 μmho/cm | 200 μmho/cm (proposed) | Lower Lawler [sic] |
| 3/6/2006 | Total Suspended Solids | 1300 mg/L | 100 mg/L | V-Ditch East |

Keller Canyon Landfill
October 18, 2007
Page 5 of 16

| 3/6/2006 | Specific Conductivity | 960 μmho/cm | 200 μmho/cm (proposed) | V-Ditch East |
|---|---|---|---|---|
| 3/6/2006 | Chemical Oxygen Demand | 240 mg/L | 120 mg/L | V-Ditch East |
| 3/6/2006 | Total Suspended Solids | 410 mg/L | 100 mg/L | V-Ditch West |
| 3/6/2006 | Specific Conductivity | 490 μmho/cm | 200 μmho/cm (proposed) | V-Ditch West |
| 3/6/2006 | Total Suspended Solids | 610 mg/L | 100 mg/L | Upper Lawler [sic] |
| 3/6/2006 | Specific Conductivity | 950 μmho/cm | 200 μmho/cm (proposed) | Upper Lawler [sic] |
| 3/6/2006 | Specific Conductivity | 2400 μmho/cm | 200 μmho/cm (proposed) | Sedimentation Pond Spillway |
| 1/2/2006 | Total Suspended Solids | 220 mg/L | 100 mg/L | Lower Lawler [sic] |
| 1/2/2006 | Specific Conductivity | 1100 μmho/cm | 200 μmho/cm (proposed) | Lower Lawler [sic] |
| 1/2/2006 | Total Suspended Solids | 240 mg/L | 100 mg/L | V-Ditch East |
| 1/2/2006 | Chemical Oxygen Demand | 130 mg/L | 120 mg/L | V-Ditch East |
| 1/2/2006 | Total Suspended Solids | 790 mg/L | 100 mg/L | V-Ditch West |
| 1/2/2006 | Specific Conductivity | 540 mg/L | 200 μmho/cm (proposed) | V-Ditch West |
| 1/2/2006 | Chemical Oxygen Demand | 160 mg/L | 120 mg/L | V-Ditch West |
| 1/2/2006 | Total Suspended Solids | 260 mg/L | 100 mg/L | Upper Lawler [sic] |
| 1/2/2006 | Specific Conductivity | 1700 μmho/cm | 200 μmho/cm (proposed) | Upper Lawler [sic] |
| 1/2/2006 | Total Suspended Solids | 440 mg/L | 100 mg/L | Sedimentation Pond Spillway |
| 1/2/2006 | Specific Conductivity | 800 μmho/cm | 200 μmho/cm (proposed) | Sedimentation Pond Spillway |
| 1/2/2006 | Chemical Oxygen Demand | 210 mg/L | 120 mg/L | Sedimentation Pond Spillway |
| 2/18/2005 | Specific Conductivity | 800 μmho/cm | 200 μmho/cm (proposed) | V-Ditch West |
| 2/18/2005 | Specific Conductivity | 740 μmho/cm | 200 μmho/cm (proposed) | V-Ditch East |

Notice of Violations and Intent to File Suit

Keller Canyon Landfill
October 18, 2007
Page 6 of 16

| 2/18/2005 | Total Suspended Solids | 180 mg/L | 100 mg/L | Lower Lawler [sic] |
|---|---|---|---|---|
| 2/18/2005 | Specific Conductivity | 1400 µmho/cm | 200 µmho/cm (proposed) | Lower Lawler [sic] |
| 2/18/2005 | Specific Conductivity | 2700 µmho/cm | 200 µmho/cm (proposed) | Sedimentation Pond Spillway |
| 1/11/2005 | Total Suspended Solids | 290 mg/L | 100 mg/L | Lower Lawler [sic] |
| 1/11/2005 | Specific Conductivity | 921 µmho/cm | 200 µmho/cm (proposed) | Lower Lawler [sic] |
| 1/11/2005 | Total Suspended Solids | 1200 mg/L | 100 mg/L | V-Ditch East |
| 1/11/2005 | Specific Conductivity | 224 µmho/cm | 200 µmho/cm (proposed) | V-Ditch East |
| 1/11/2005 | Chemical Oxygen Demand | 180 mg/L | 120 mg/L | V-Ditch East |
| 1/11/2005 | Total Suspended Solids | 680 mg/L | 100 mg/L | V-Ditch West |
| 1/11/2005 | Specific Conductivity | 761 µmho/cm | 200 µmho/cm (proposed) | V-Ditch West |
| 1/11/2005 | Total Suspended Solids | 140 mg/L | 100 mg/L | Upper Lawler [sic] |
| 1/11/2005 | Specific Conductivity | 957 µmho/cm | 200 µmho/cm (proposed) | Upper Lawler [sic] |
| 1/11/2005 | Total Suspended Solids | 110 mg/L | 100 mg/L | Sedimentation Pond Spillway |
| 1/11/2005 | Specific Conductivity | 2070 µmho/cm | 200 µmho/cm (proposed) | Sedimentation Pond Spillway |
| 2/25/2004 | Total Suspended Solids | 520 mg/L | 100 mg/L | Lower Lawler [sic] |
| 2/25/2004 | Specific Conductivity | 550 µmho/cm | 200 µmho/cm (proposed) | Lower Lawler [sic] |
| 2/25/2004 | Specific Conductivity | 671 µmho/cm | 200 µmho/cm (proposed) | V-Ditch East |
| 2/25/2004 | Total Suspended Solids | 130 mg/L | 100 mg/L | V-Ditch West |
| 2/25/2004 | Specific Conductivity | 315 µmho/cm | 200 µmho/cm (proposed) | V-Ditch West |
| 2/25/2004 | Total Suspended Solids | 360 mg/L | 100 mg/L | Upper Lawler [sic] |
| 2/25/2004 | Specific Conductivity | 470 µmho/cm | 200 µmho/cm (proposed) | Upper Lawler [sic] |

Keller Canyon Landfill
October 18, 2007
Page 7 of 16

| 2/25/2004 | Total Suspended Solids | 390 mg/L | 100 mg/L | Sedimentation Pond Spillway |
| 2/25/2004 | Specific Conductivity | 1150 µmho/cm | 200 µmho/cm (proposed) | Sedimentation Pond Spillway |
| 12/29/2003 | Total Suspended Solids | 210 mg/L | 100 mg/L | Lower Lawler [sic] |
| 12/29/2003 | Total Suspended Solids | 550 mg/L | 100 mg/L | V-Ditch East |
| 12/29/2003 | Chemical Oxygen Demand | 150 mg/L | 120 mg/L | V-Ditch East |
| 12/29/2003 | Total Suspended Solids | 1400 mg/L | 100 mg/L | V-Ditch West |
| 12/29/2003 | Specific Conductivity | 378 µmho/cm | 200 µmho/cm (proposed) | V-Ditch West |
| 12/29/2003 | Chemical Oxygen Demand | 257 mg/L | 120 mg/L | V-Ditch West |
| 12/29/2003 | Specific Conductivity | 2480 µmho/cm | 200 µmho/cm (proposed) | Upper Lawler [sic] |
| 12/29/2003 | Total Suspended Solids | 5000 mg/L | 100 mg/L | Sedimentation Pond Spillway |
| 12/29/2003 | Specific Conductivity | 1480 mg/L | 200 µmho/cm (proposed) | Sedimentation Pond Spillway |
| 12/29/2003 | Chemical Oxygen Demand | 268 mg/L | 120 mg/L | Sedimentation Pond Spillway |
| 4/4/2003 | Total Suspended Solids | 120 mg/L | 100 mg/L | Lower Lawler [sic] |
| 4/4/2003 | Specific Conductivity | 354 µmho/cm | 200 µmho/cm (proposed) | Lower Lawler [sic] |
| 4/4/2003 | Total Suspended Solids | 970 mg/L | 100 mg/L | V-Ditch East |
| 4/4/2003 | Specific Conductivity | 1140 µmho/cm | 200 µmho/cm (proposed) | V-Ditch East |
| 4/4/2003 | Chemical Oxygen Demand | 358 mg/L | 120 mg/L | V-Ditch East |
| 4/4/2003 | Total Suspended Solids | 2000 mg/L | 100 mg/L | V-Ditch West |
| 4/4/2003 | Specific Conductivity | 1050 µmho/cm | 200 µmho/cm (proposed) | V-Ditch West |
| 4/4/2003 | Chemical Oxygen Demand | 420 mg/L | 120 mg/L | V-Ditch West |
| 4/4/2003 | Specific Conductivity | 2210 µmho/cm | 200 µmho/cm (proposed) | Upper Lawler [sic] |

Notice of Violations and Intent to File Suit

Keller Canyon Landfill
October 18, 2007
Page 8 of 16

| 4/4/2003 | Total Suspended Solids | 620 mg/L | 100 mg/L | Sedimentation Pond Spillway |
| 4/4/2003 | Specific Conductivity | 1070 μmho/cm | 200 μmho/cm (proposed) | Sedimentation Pond Spillway |
| 4/4/2003 | Chemical Oxygen Demand | 160 mg/L | 120 mg/L | Sedimentation Pond Spillway |
| 12/15/2002 | Specific Conductivity | 1480 μmho/cm | 200 μmho/cm (proposed) | Lower Lawler [sic] |
| 12/15/2002 | Total Suspended Solids | 1100 mg/L | 100 mg/L | V-Ditch East |
| 12/15/2002 | Specific Conductivity | 279 μmho/cm | 200 μmho/cm (proposed) | V-Ditch East |
| 12/15/2002 | Chemical Oxygen Demand | 170 mg/L | 120 mg/L | V-Ditch East |
| 12/15/2002 | Total Suspended Solids | 710 mg/L | 100 mg/L | V-Ditch West |
| 12/15/2002 | Specific Conductivity | 247 μmho/cm | 200 μmho/cm (proposed) | V-Ditch West |
| 12/15/2002 | Chemical Oxygen Demand | 180 mg/L | 120 mg/L | V-Ditch West |
| 12/15/2002 | Specific Conductivity | 2270 μmho/cm | 200 μmho/cm (proposed) | Upper Lawler [sic] |
| 12/15/2002 | Specific Conductivity | 1150 μmho/cm | 200 μmho/cm (proposed) | Sedimentation Pond Spillway |

CSPA's investigation, including its review of Keller Canyon Landfill's analytical results documenting pollutant levels in the Facility's storm water discharges well in excess of EPA's benchmark values and the State Board's proposed benchmarks, indicates that Keller Canyon Landfill has not implemented BAT and BCT at the Facility for its discharges of TSS, specific conductivity, COD and other pollutants, in violation of Effluent Limitation B(3) of the General Permit. Keller Canyon Landfill was required to have implemented BAT and BCT by no later than October 1, 1992. Thus, Keller Canyon Landfill is discharging polluted storm water associated with its industrial operations without having implemented BAT and BCT. In addition, the above numbers indicate that the facility is discharging polluted storm water in violation of Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) of the General Permit. CSPA alleges that Keller Canyon Landfill has violated and continues to violate Effluent Limitation B(3) of the General Permit each and every day that the Facility fails to install the requisite BAT or BCT pollution controls. CSPA further alleges that Keller Canyon Landfill has violated Effluent Limitation B(3) Discharge Prohibitions A(1) and A(2) and Receiving Water Limitations C(1) and C(2) on each of the dates identified above.

CSPA also alleges that violations have occurred and will occur on other rain dates, including during every significant rain event that has occurred since October 18, 2002, and that

Keller Canyon Landfill
October 18, 2007
Page 9 of 16

will occur at the Facility subsequent to the date of this Notice of Violations and Intent to File Suit. Attachment A, attached hereto, sets forth each of the specific rain dates on which CSPA alleges that Keller Canyon Landfill has discharged storm water containing impermissible levels of TSS, specific conductivity and COD in violation of Effluent Limitation B(3), Discharge Prohibitions A(1) and A(2), and Receiving Water Limitations C(1) and C(2) of the General Permit.

These unlawful discharges from the Facility are ongoing. Each day that Keller Canyon Landfill has failed to implement BAT and BCT constitutes a separate violation of the General Permit and the Act. Each discharge of storm water to each storm drain at or adjacent to the Facility containing any of these pollutants constitutes a separate violation of the General Permit and the Act. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Keller Canyon Landfill is subject to penalties for violations of the General Permit and the Act since October 18, 2002.

### B.    Failure to Sample and Analyze for Mandatory Parameters

With some limited adjustments, facilities covered by the General Permit must sample two storm events per season from each of their storm water discharge locations. General Permit, Section B(5)(a). Collected samples must be analyzed for TSS, pH, specific conductance, and either total organic carbon or O&G. Id. at Section B(5)(c)(i). Facilities also must analyze their storm water samples for "[t]oxic chemicals and other pollutants that are likely to be present in storm water discharges in significant quantities. Id. at Section B(5)(c)(ii). Facilities with certain SIC Codes also must analyze for additional specified parameters. Id. at Section B(5)(c)(iii); id., Table D. The General Permit excepts Facilities from analyzing an additional parameter if either "(1) the parameter has not been detected in significant quantities from the last two consecutive sampling events, or (2) the parameter is not likely to be present in storm water discharges and authorized non-storm water discharges in significant quantities based upon the facility operator's evaluation of the facilities industrial activities, potential pollutant sources, and SWPPP." Facilities within SIC Code 4953, including Keller Canyon Landfill, must analyze each of its storm water samples for iron. Id., Table D (Sector L). CSPA's review of Keller Canyon Landfill's monitoring data indicates that Keller Canyon Landfill has failed to analyze for iron in every sample taken at the Facility for the past five years and has not provided a sufficient explanation for its failure to do so in each of the past five years.

Each failure to analyze for a specific required parameters is a violation of General Permit, Section B(5)(c)(iii). Ten samples per annual report (five storm drains times two storm events) times five annual reports (2002-2003, 2003-2004, 2004-2005, 2005-2006, 2006-2007) less five samples during 2006-2007 (due to a lack of rain events) add up to 45 distinct violations of the General Permit. These violations are ongoing. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, Keller Canyon Landfill is subject to penalties for violations of the General Permit and the Act since October 18, 2002.

Keller Canyon Landfill
October 18, 2007
Page 10 of 16

### C.    Failure to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

Section A(1) and Provision E(2) of the General Industrial Storm Water Permit require dischargers of storm water associated with industrial activity to develop, implement, and update an adequate storm water pollution prevention plan ("SWPPP") no later than October 1, 1992. Section A(1) and Provision E(2) requires dischargers who submitted an NOI pursuant to the General Permit to continue following their existing SWPPP and implement any necessary revisions to their SWPPP in a timely manner, but in any case, no later than August 1, 1997.

The SWPPP must, among other requirements, identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm and non-storm water discharges from the facility and identify and implement site-specific best management practices ("BMPs") to reduce or prevent pollutants associated with industrial activities in storm water and authorized non-storm water discharges (General Permit, Section A(2)). The SWPPP must include BMPs that achieve BAT and BCT (Effluent Limitation B(3)). The SWPPP must include: a description of individuals and their responsibilities for developing and implementing the SWPPP (General Permit, Section A(3)); a site map showing the facility boundaries, storm water drainage areas with flow pattern and nearby water bodies, the location of the storm water collection, conveyance and discharge system, structural control measures, impervious areas, areas of actual and potential pollutant contact, and areas of industrial activity (General Permit, Section A(4)); a list of significant materials handled and stored at the site (General Permit, Section A(5)); a description of potential pollutant sources including industrial processes, material handling and storage areas, dust and particulate generating activities, a description of significant spills and leaks, a list of all non-storm water discharges and their sources, and a description of locations where soil erosion may occur (General Permit, Section A(6)).

The SWPPP also must include an assessment of potential pollutant sources at the Facility and a description of the BMPs to be implemented at the Facility that will reduce or prevent pollutants in storm water discharges and authorized non-storm water discharges, including structural BMPs where non-structural BMPs are not effective (General Permit, Section A(7), (8)). The SWPPP must be evaluated to ensure effectiveness and must be revised where necessary (General Permit, Section A(9),(10)).

CSPA's investigation of the conditions at the Facility as well as Keller Canyon Landfill's Annual Reports indicate that Keller Canyon Landfill has been operating with an inadequately developed or implemented SWPPP in violation of the requirements set forth above. Keller Canyon Landfill has failed to adequately evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary. Keller Canyon Landfill has been in continuous violation of Section A and Provision E(2) of the General Permit every day since at least October 18, 2002, and will continue to be in violation every day that Keller Canyon Landfill fails to develop and implement an effective SWPPP. Keller Canyon Landfill is subject to penalties for violations of the Order and the Act occurring since October 18, 2002.

Notice of Violations and Intent to File Suit

Keller Canyon Landfill
October 18, 2007
Page 11 of 16

### D.    Failure to File True and Correct Annual Reports.

Section B(14) of the General Industrial Storm Water Permit requires dischargers to submit an Annual Report by July 1st of each year to the executive officer of the relevant Regional Board. The Annual Report must include summaries and evaluations of visual observations made during the previous year, including summaries and evaluations of the requisite monthly storm water visual observations. General Permit, B(4), B(14). Monthly storm water observations must "document the presence of any floatable or suspended materials, oil and grease, discolorations, turbidity, . . . and source of any pollutants." General Permit, B(4)(c).

The Annual Report must be signed and certified by an appropriate corporate officer. General Permit, Sections B(14), C(9), (10). Section A(9)(d) of the General Industrial Storm Water Permit requires the discharger to include in their annual report an evaluation of their storm water controls, including certifying compliance with the General Industrial Storm Water Permit. *See also* General Permit, Sections C(9) and (10) and B(14).

Since at least 2007, Keller Canyon Landfill and its agents, Norm Christensen and Kevin Chiapello, have provided false information in their Annual Reports by certifying that they did not observe any pollutants in storm water discharges from the Facility despite taking water samples at the same time as the visual observations indicating very high levels of total suspended solids which CSPA believes would necessarily be accompanied by discoloration and turbidity in the discharge. False reporting of no visible pollutants were included in the 2006-2007 Annual Report for the following wet weather dates at the listed outfalls:

| Date | TSS level for which Keller Canyon Landfill and agent reported "no visible pollutants" | Outfall |
|---|---|---|
| 2/9/2007 | 5900 mg/L | Sedimentation Pond Spillway |
| 2/9/2007 | 500 mg/L | Lower Lawler [sic] |
| 2/9/2007 | 890 mg/L | V-Ditch East |
| 2/9/2007 | 2800 mg/L | V-Ditch West |

By falsely certifying that no pollutants were visible on each of those days, Keller Canyon Landfill and Kevin Chiapello violated and continue to violate General Permit, Sections A(9)(d), B(4), B(14), C(9), and C(10).

In addition, for at least the last five years, Keller Canyon Landfill and its agents, Norm Christensen and Kevin Chiapello, inaccurately certified in their Annual Reports that the facility was in compliance with the General Permit. Consequently, Keller Canyon Landfill and its agents have violated Sections A(9)(d), B(14) and C(9) & (10) of the General Industrial Storm Water Permit every time Keller Canyon Landfill or its agent failed to submit a complete or correct report and every time Keller Canyon Landfill or its agents falsely purported to comply with the Act. Keller Canyon Landfill is subject to penalties for violations of Section (C) of the General Industrial Storm Water Permit and the Act occurring since July 1, 2003.

Notice of Violations and Intent to File Suit

Keller Canyon Landfill
October 18, 2007
Page 12 of 16

## IV.    Persons Responsible for the Violations.

CSPA puts Keller Canyon Landfill and Kevin Chiapello on notice that they are the persons responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts Keller Canyon Landfill and Kevin Chiapello on notice that it intends to include those subsequently identified persons in this action.

## V.    Name and Address of Noticing Party.

Our name, address and telephone number is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainier Avenue
Stockton, CA 95204
Tel. (209) 464-5067

## VI.    Counsel.

CSPA has retained legal counsel to represent it in this matter. Please direct all communications to:

Michael R. Lozeau                          Andrew L. Packard
Douglas J. Chermak                         Michael Lynes
Law Office of Michael R. Lozeau            Law Offices of Andrew L. Packard
1516 Oak Street, Suite 216                 319 Pleasant Street
Alameda, California 94501                  Petaluma, California 94952
Tel. (510) 749-9102                        Tel. (707) 763-7227
mrlozeau@lozeaulaw.com                     andrew@packardlawoffices.com

## VII.    Penalties.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation (40 C.F.R. § 19.4) each separate violation of the Act subjects Keller Canyon Landfill and its agents to a penalty of up to $32,500 per day per violation for all violations occurring during the period commencing five years prior to the date of this Notice of Violations and Intent to File Suit. In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law. Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)), permits prevailing parties to recover costs and fees, including attorneys' fees.

CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the Act against Keller

Notice of Violations and Intent to File Suit

Keller Canyon Landfill
October 18, 2007
Page 13 of 16

Canyon Landfill and its agents for the above-referenced violations upon the expiration of the 60-day notice period. However, during the 60-day notice period, we would be willing to discuss effective remedies for the violations noted in this letter. If you wish to pursue such discussions in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Bill Jennings, Executive Director
California Sportfishing Protection Alliance

cc:    CT Corporation System, Agent for Service of Process for
       Keller Canyon Landfill Company

Notice of Violations and Intent to File Suit

## SERVICE LIST

Steve Johnson, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Dorothy Rice, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812-0100

Alberto Gonzalez, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Wayne Nastri, Administrator
U.S. EPA – Region 9
75 Hawthorne Street
San Francisco, CA 94105

Bruce H. Wolfe, Executive Officer II
San Francisco Bay Regional Water Quality Control Board
1515 Clay Street, Suite 1400
Oakland, CA 94612

ATTACHMENT A

Rain Dates, Keller Canyon Landfill, Pittsburg, CA

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| November | 07 | 2002 | February | 26 | 2004 | December | 18 | 2005 |
| December | 09 | 2002 | March | 01 | 2004 | December | 20 | 2005 |
| December | 14 | 2002 | May | 28 | 2004 | December | 21 | 2005 |
| December | 16 | 2002 | October | 19 | 2004 | December | 22 | 2005 |
| December | 20 | 2002 | October | 23 | 2004 | December | 25 | 2005 |
| December | 21 | 2002 | October | 24 | 2004 | December | 27 | 2005 |
| December | 27 | 2002 | November | 03 | 2004 | December | 28 | 2005 |
| December | 30 | 2002 | November | 09 | 2004 | December | 30 | 2005 |
| January | 09 | 2003 | November | 10 | 2004 | December | 31 | 2005 |
| January | 10 | 2003 | November | 11 | 2004 | January | 01 | 2006 |
| January | 21 | 2003 | December | 06 | 2004 | January | 02 | 2006 |
| March | 14 | 2003 | December | 07 | 2004 | January | 18 | 2006 |
| March | 16 | 2003 | December | 08 | 2004 | January | 30 | 2006 |
| March | 22 | 2003 | December | 27 | 2004 | February | 17 | 2006 |
| April | 03 | 2003 | December | 28 | 2004 | February | 26 | 2006 |
| April | 12 | 2003 | December | 29 | 2004 | February | 27 | 2006 |
| May | 02 | 2003 | December | 30 | 2004 | March | 02 | 2006 |
| May | 03 | 2003 | December | 31 | 2004 | March | 03 | 2006 |
| August | 21 | 2003 | January | 01 | 2005 | March | 06 | 2006 |
| November | 06 | 2003 | January | 02 | 2005 | March | 11 | 2006 |
| November | 08 | 2003 | January | 06 | 2005 | March | 13 | 2006 |
| November | 15 | 2003 | January | 07 | 2005 | March | 17 | 2006 |
| November | 30 | 2003 | January | 08 | 2005 | March | 18 | 2006 |
| December | 01 | 2003 | January | 10 | 2005 | March | 21 | 2006 |
| December | 04 | 2003 | January | 11 | 2005 | March | 25 | 2006 |
| December | 06 | 2003 | January | 25 | 2005 | March | 28 | 2006 |
| December | 09 | 2003 | January | 27 | 2005 | March | 29 | 2006 |
| December | 10 | 2003 | February | 14 | 2005 | April | 03 | 2006 |
| December | 13 | 2003 | February | 15 | 2005 | April | 04 | 2006 |
| December | 19 | 2003 | February | 17 | 2005 | April | 05 | 2006 |
| December | 22 | 2003 | February | 18 | 2005 | April | 11 | 2006 |
| December | 23 | 2003 | February | 19 | 2005 | April | 12 | 2006 |
| December | 24 | 2003 | February | 20 | 2005 | April | 13 | 2006 |
| December | 26 | 2003 | February | 26 | 2005 | April | 17 | 2006 |
| December | 28 | 2003 | February | 27 | 2005 | May | 21 | 2006 |
| December | 29 | 2003 | March | 01 | 2005 | November | 01 | 2006 |
| January | 01 | 2004 | March | 03 | 2005 | November | 03 | 2006 |
| January | 02 | 2004 | March | 18 | 2005 | November | 10 | 2006 |
| January | 06 | 2004 | March | 19 | 2005 | December | 14 | 2006 |
| January | 23 | 2004 | March | 21 | 2005 | December | 21 | 2006 |
| February | 02 | 2004 | March | 22 | 2005 | January | 28 | 2007 |
| February | 03 | 2004 | March | 27 | 2005 | February | 08 | 2007 |
| February | 15 | 2004 | April | 08 | 2005 | February | 09 | 2007 |
| February | 16 | 2004 | April | 27 | 2005 | February | 10 | 2007 |
| February | 17 | 2004 | May | 07 | 2005 | February | 12 | 2007 |
| February | 18 | 2004 | May | 08 | 2005 | February | 22 | 2007 |
| February | 21 | 2004 | November | 28 | 2005 | February | 25 | 2007 |
| February | 24 | 2004 | November | 30 | 2005 | February | 26 | 2007 |
| February | 25 | 2004 | December | 17 | 2005 | February | 27 | 2007 |

Notice of Violations and Intent to File Suit

ATTACHMENT A

Rain Dates, Keller Canyon Landfill, Pittsburg, CA

| April | 14 | 2007 |
|-------|----|------|
| April | 21 | 2007 |
| April | 22 | 2007 |

Notice of Violations and Intent to File Suit