MICHAEL R. LOZEAU (State Bar No. 142893)
DOUGLAS J. CHERMAK (State Bar No. 233382)
Lozeau Drury LLP
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel: (510) 749-9102
Fax: (510) 749-9103 (fax)
E-mail: Michael@lozeaudrury.com
        Doug@lozeaudrury.com

ANDREW L. PACKARD (State Bar No. 168690)
MICHAEL P. LYNES (State Bar No. 230462)
Law Offices of Andrew L. Packard
319 Pleasant Street
Petaluma, CA 94952
Tel: (707) 763-7227
Fax: (415) 763-9227
E-mail: andrew@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

THOMAS M. BRUEN (State Bar No. 63324)
Law Offices of Thomas M. Bruen
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel: (925) 295-3131
Fax: (925) 295-3132
E-mail: tbruen@sbcglobal.net

Attorney for Defendant
KELLER CANYON LANDFILL COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>KELLER CANYON LANDFILL COMPANY, a corporation.<br><br>          Defendant. | Case No. 3:08-cv-01251-JSW<br><br>JOINT CASE MANAGEMENT STATEMENT<br><br>Judge: Hon. Jeffrey S. White<br><br>Conference: June 20, 2008<br>Time: 1:30 pm<br>Courtroom: 2 |

1    This Joint Case Management Statement is submitted on behalf of Plaintiff California

2  Sportfishing Protection Alliance ("CSPA") and Defendant Keller Canyon Landfill Company

3  ("Keller Canyon") in accordance with the Court's Order Setting Case Management Conference

4  dated May 6, 2008 and Civil Local Rule 16-9.

5  **1.    Jurisdiction and Service**

6    The Court has subject matter jurisdiction over the parties and the subject matter of this action

7  pursuant to Section 505(a)(1)(A) of the federal Clean Water Act (the "Act"), 33 U.S.C. §

8  1365(a)(1)(A) and 28 U.S.C. § 1331 (an action arising under the laws of the United States).  CSPA

9  served Keller Canyon on April 2, 2008.

10  **2.    Facts**

11    **A.    CSPA maintains that:**

12    The case is a citizen suit enforcement action brought by Plaintiff CSPA under section 505 of

13  the federal Clean Water Act, 33 U.S.C. § 1365.  CSPA's Complaint alleges that Keller Canyon has

14  violated and continues to violate the terms of the National Pollutant Discharge Elimination System

15  ("NPDES") Permit[1] addressing storm water pollution discharged from Keller Canyon's landfill

16  facility located in Pittsburg, California.  CSPA's Complaint alleges that Keller Canyon's facility

17  discharges storm water containing excessive levels of chemical oxygen demand, electrical

18  conductance, and suspended solids into waters of the United States without applying certain

19  requisite pollution control technologies, and that such storm water exceeds certain water quality

20  standards established by the State of California and benchmark levels established by the United

21  States Environmental Protection Agency ("EPA").  CSPA also claims that Keller Canyon failed to

22  perform certain requirements of its NPDES Permit, including conducting requisite monitoring.

---

[1]    The NPDES Permit that CSPA alleges Keller Canyon is violating is the "State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities."

1    Based upon these allegations, CSPA seeks civil penalties and injunctive relief.

2    On or about October 19, 2007, CSPA provided Keller Canyon a notice of Defendant's

3    violations of the Act, alleging that Keller Canyon violated and continues to violate the terms of the

4    General National Pollutant Discharge Elimination System ("NPDES") Permit for Storm Water

5    Discharges from Industrial Activity issued by the California State Water Resources Control Board

6    ("SWRCB") at Keller Canyon's Class II Landfill located in Pittsburg, California.  In that notice

7    CSPA, indicated its intention to file suit against Keller Canyon, and contemporaneously provided

8    such notice to the Administrator of the United States Environmental Protection Agency ("EPA"), the

9    Administrator of EPA Region IX, the Executive Director of the State Water Resources Control

10   Board ("State Board"), and to the Executive Office of the Regional Water Quality Control Board,

11   San Francisco Bay Region ("Regional Board").

12   After sixty days had passed since notice was served on the Defendant and the state and

13   federal agencies, CSPA filed its complaint alleging that Keller Canyon's Pittsburg facility

14   discharges storm water into waters of the United States without applying certain requisite pollution

15   control technologies and which exceed certain water quality standards and benchmark levels

16   established by the EPA.  CSPA also claims that Keller Canyon failed to perform certain

17   requirements of the NPDES General Permit relating to the adequacy of its storm water pollution

18   prevention plan and monitoring.  Based upon these allegations, CSPA seeks civil penalties and

19   injunctive relief.  CSPA further contends that Keller Canyon's responses as outlined in this case

20   management statement misstate CSPA's claims and focus on irrelevant and tangential issues to those

21   raised by CSPA in its complaint.

22   **B.    Keller Canyon maintains that:**

23   The Keller Canyon Landfill is a state-of-the-art "Class II" municipal solid waste landfill

24   which opened for operations in May, 1992. Compared with most industrial facilities, landfills are

25   heavily regulated in California. The Landfill is regulated by the California Regional Water Quality

26   Control Board, the California Integrated Waste Management Board, the Local Enforcement Agency

27   of Contra Costa County, the County Development Department, the Bar Area Air Quality

28   Management District, and other regulatory agencies. The Landfill files periodic monitoring reports

1    with many of these agencies, including the Water Board, and is subject to frequent inspections by

2    regulators.

3        The landfill is designed with an extensive storm water management system. Under federal

4    and state standards for Class II facilities, the storm water management system at the landfill must be

5    designed to protect the waste management unit from damage from a 1,000 year storm event. The

6    landfill's surface water drainage system includes an extensive network of concrete v-ditches to

7    divert surface water runoff from the waste management unit, sedimentation ladders to retain

8    sediment loads from surface water captured by the system, and a sedimentation basin at the foot of

9    the landfill which is also designed for a 1,000 storm event. This system is augmented by

10   hydroseeding, straw bales, siltation fences and other non-structural measures to further reduce

11   sediment loads in storm water run off at the site.

12       The residential neighborhood downhill from the landfill had previously been inundated with

13   periodic flooding from the undeveloped Keller Canyon site, carrying large amounts of mud and

14   debris into the neighborhood; these occurrences stopped once the landfill was constructed. Keller

15   Canyon's storm water improvements have greatly diminished sedimentation run off from the Keller

16   Canyon area compared with the pre-landfill status quo.

17       Keller Canyon is proud of its environmental compliance record. The Landfill has never been

18   cited by any regulatory agency for having an inadequate storm water management system, or for any

19   inadequacies in its storm water management plan and monitoring system, or for any violations of its

20   NPDES permit.

21       Further, Keller Canyon vigorously disputes that it has violated its storm water permit. The

22   alleged effluent limits described in CSPA's Notice of Intent to Sue and Complaint are not NPDES

23   effluent limitations at all, as the general storm water permit clearly indicates. Furthermore, Keller

24   Canyon has complied with the regulatory requirements for its Storm Water Pollution Prevention

25   Plan and has monitored storm water runoff at the Landfill at the times, locations, and for the

26   parameters required by its permit—and files annual reports with this information with the Regional

27   Water Board.

28

3.   **Legal Issues**

**Plaintiff's Statement of the Legal Issues:**

The points of law in this action concern the federal Clean Water Act.  Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States, unless such discharge is in compliance with various enumerated sections of the Act.  Among other things, Section 301(a) prohibits discharges not authorized by, or in violation of, the terms of an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.  Section 402(p) of the Act establishes a framework for regulating municipal and industrial storm water discharges under the NPDES program.  33 U.S.C. § 1342(p).  States with approved NPDES permit programs are authorized by Section 402(p) to regulate industrial storm water discharges through individual permits issued to dischargers or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers.  33 U.S.C. § 1342(p).

Pursuant to Section 402 of the Act, 33 U.S.C. § 1342, the Administrator of the U.S. EPA has authorized California's State Board to issue NPDES permits including general NPDES permits in California.  The State Board elected to issue a statewide general permit for industrial storm water discharges.  The State Board issued the General Permit on or about November 19, 1991, modified the General Permit on or about September 17, 1992, and reissued the General Permit on or about April 17, 1997, pursuant to Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p).  In order to discharge storm water lawfully in California, industrial dischargers must comply with the terms of the General Permit or have obtained and complied with an individual NPDES permit.  33 U.S.C. § 1311(a).

CSPA claims that Keller Canyon has not complied with the terms of this permit.  The primary legal issues in this matter are:  (1) whether Defendant has implemented adequate Best Management Practices (BMPs) to achieve the Best Available Technology Economically Achievable ("BAT") for toxic pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants standards set forth in the General Permit;  (2) whether Defendant has developed and implemented an adequate Storm Water Prevention Pollution Plan (SWPPP); (3) whether Defendant has implemented an adequate monitoring and reporting program; (4) the number

of violations of the Permit and the Act; (5) whether Defendant falsely certified compliance with the General Permit in its annual reports; (6) appropriate injunctive relief; and (7) an assessment of civil penalties for Defendant's violations. CSPA disputes that Keller Canyon can meet its heavy burden to demonstrate that any of CSPA's claims are moot. Nor are the questions of Keller Canyon's compliance with the pollution treatment technology requirements of the NPDES permit an invitation for the Court to micromanage the landfill's activities. Lastly, inaction by the Regional Board has no bearing on questions of Keller Canyon's compliance with the General Permit and only underscores CSPA's right to bring this enforcement action.

**Defendant's Statement of the Legal Issues:**

Keller Canyon's position is that there is no basis for the prosecution of this lawsuit. Keller Canyon maintains that CSPA's claims for injunctive relief are both inappropriate and moot. They are inappropriate because Keller Canyon has not violated its permit, there is no basis to conclude that permit violations would occur in the future, and the Court should not become involved in micromanagement of measures designed to reduce sediment loads in storm water runoff. The request for injunctive relief is moot because Keller Canyon has implemented measures that CSPA claims Keller Canyon should be required to implement by force of injunction. Further, the regulatory agency with primary jurisdiction over the storm water permit (the Regional Water Board) has reviewed and accepted Keller Canyon's storm water management system design and not found Keller Canyon in violation of any aspect of the Water Board's storm water permit requirements. Keller Canyon submits that CSPA's characterization of the Water Board's position as "inaction" is not accurate.

## 4.    Motions

There are no prior or pending motions in this matter. If the case is bifurcated into liability and remedy phases, CSPA would intend to file a motion for summary judgment as to Defendant's liability. Keller Canyon has no present plan to file a dispositive motion, but reserves its right to consider filing motions for summary adjudication of issues or summary judgment based on the results of its investigation and discovery.

**5.     Amendment of Pleadings**

At this time, CSPA does not intend to amend the Complaint. After receiving Keller Canyon's disclosures or further discovery, CSPA may seek to amend the complaint to reflect claims of additional violations by Keller Canyon of its NPDES permit. Keller Canyon does not presently intend to amend its Answer, but reserves the right to do so based on the results of its further investigation and discovery.

**6.     Evidence Preservation**

The parties have exchanged their Initial Disclosures pursuant to Rule 26(a) and each represent to the other that they have taken steps to ensure that none of the relevant documents in their possession will be discarded or destroyed.

**7.     Disclosures**

The parties exchanged Initial Disclosures by U.S. Mail and e-mail on May 20, 2008.

Plaintiff's disclosures include the names of some witnesses and the documents upon which it based the allegations of the complaint, including the applicable NPDES permit, the Basin Plan, Defendant's Annual Reports, Defendant's Notice of Intent to Comply with the terms of the General Permit, and CSPA's Notice of Intent to Sue, served on Defendants on or about October 19, 2007.

Defendant's disclosures included the names of witnesses and identification of the categories of documents upon which Defendant presently bases it responses to the Complaint and its defenses. Parties reserve the right to supplement these witness lists and document categories based on the result of their further investigation and discovery.

**8.     Discovery**

The parties completed their Initial Disclosures pursuant to Rule 26(a)(1) on May 20, 2008.

**Scope of Anticipated Discovery**

**Plaintiff's Discovery**

Plaintiff will propound written discovery, notices of site inspections, and anticipates taking depositions. CSPA intends to serve Keller Canyon with requests for production of documents, requests for admissions and written interrogatories. At this time, CSPA anticipates the following subjects of discovery:

i.  Information related to operations and maintenance at the Keller Canyon Facility;

ii.  Information related to actual and potential sources of pollutants to storm water at the Facility;

iii.  Information related to storm water discharges from the Facility, including when they occurred, where they occurred, the presence of pollutants, the volume of discharges, and other relevant information;

iv.  Information related to the storm water management measures that have been proposed or implemented at the Facility;

v.  Information related to any other pollutant discharges to water from the Facility governed by the Facility's NPDES permit;

vi.  Information relating to Keller Canyon's interactions with the California Regional Water Quality Control Board for the San Francisco region;

vii.  CSPA intends to request sufficient site inspections in order to characterize storm water quantity and quality at the Facility during the upcoming rainy season and to evaluate any implemented or other available storm water pollution management measures.  In addition to any site inspections during the upcoming rainy season, pursuant to Rule 34, once discovery commences, CSPA will request an immediate site inspection of Keller Canyon's Facility;

viii.  Information relating to decisions by Keller Canyon's management and/or governing body relating to compliance with the requirements of the Clean Water Act;

ix.  Information relating to the Clean Water Act's criteria for assessing civil penalties, including but not limited to Keller Canyon's financial information and its ability to pay civil penalties;

x.  Information relating to the identity and responsibilities of all persons with information relating to any of the above categories of information;

CSPA would intend to depose employees, managers and other agents of Keller Canyon who may have information relevant to any of the above categories of information. Although CSPA has

1   attempted to provide a thorough overview of the issues upon which it intends to focus its discovery

2   efforts, the above list may be expanded as CSPA's investigation unfolds.

3          **Defendant's Discovery**

4          Keller Canyon intends to conduct discovery regarding the formation and organization of

5   CSPA, including facts regarding its standing to bring this action. Keller Canyon may seek

6   information from the various regulatory agencies that have jurisdiction over the Keller Canyon

7   landfill regarding the Landfill's compliance with permits, laws and regulations applicable to this

8   Class II landfill and storm water management requirements. Keller Canyon will likely seek to

9   depose some principals or officers of CSPA regarding the foregoing issues.  Keller Canyon will also

10  depose Plaintiff's expert witnesses.

11  **Proposed Limitations or Modifications of the Discovery Rules**

12         The parties jointly request that the Court increase to 50 the number of interrogatories that

13  may be requested by each party.

14  **Proposed Discovery Plan**

15         The parties propose to bifurcate discovery into a liability and phase and a remedy phase.

16  This should apply to both initial disclosures and formal discovery.  Bifurcating discovery would not

17  result in two separate trials but would allow both parties to evaluate and, if appropriate, bring

18  motions for summary judgment as to liability at the conclusion of discovery on liability issues.  By

19  bifurcating discovery, the parties would be enabled to first focus on questions of Defendant's

20  liability and, if appropriate, filing dispositive motions regarding liability, before expending

21  additional resources on discovery and experts developing issues exclusively relating to remedies.

**9.    Class Action**

22         This action is not a class action.

23
**10.   Related Cases**

24         There are no cases related to this matter.

25
**11.   Relief**

26         CSPA seeks the following relief:

27              a.  Declare Defendant to have violated and to be in violation of the Act as alleged herein;

28

b.  Enjoin Defendant from discharging polluted storm water from the Facility unless authorized by the Permit;

c.  Enjoin Defendant from further violating the substantive and procedural requirements of the Permit;

d.  Order Defendant to immediately implement storm water pollution control and treatment technologies and measures that are equivalent to BAT or BCT and prevent pollutants in the Facility's storm water from contributing to violations of any water quality standards;

e.  Order Defendant to comply with the Permit's monitoring and reporting requirements, including ordering supplemental monitoring to compensate for past monitoring violations;

f.  Order Defendant to prepare a SWPPP consistent with the Permit's requirements and implement procedures to regularly review and update the SWPPP;

g.  Order Defendant to provide Plaintiff with reports documenting the quality and quantity of their discharges to waters of the United States and their efforts to comply with the Act and the Court's orders;

h.  Order Defendant to pay civil penalties of up to $27,500 per day per violation for all violations occurring before March 15, 2004, and up to $32,500 per day per violation for all violations occurring after March 15, 2004, for each violation of the Act pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 40 C.F.R. §§ 19.1 - 19.4;

i.  Order Defendant to take appropriate actions to restore the quality of waters impaired or adversely affected by their activities;

j.  Award Plaintiff's costs (including reasonable investigative, attorney, witness, compliance oversight, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

k.  Award any such other and further relief as this Court may deem appropriate.

Keller Canyon seeks dismissal of the Complaint and an award of its attorney's fees and costs of litigation.

**12.    Settlement and ADR**

**Prospects for Settlement.**  Plaintiff and Defendant have attempted to pursue a settlement agreement. The parties have made significant progress on a potential settlement but face substantial

1  barriers on one element of a potential agreement.  Therefore, it may prove helpful to assign a

2  Magistrate Judge to further assist the discussions.

3           **ADR Efforts.**  The parties conferred pursuant to ADR Local Rule 3-5 to discuss ADR

4  options on May 28, 2008.  The parties request that the court assign the case to Magistrate Judge for a

5  settlement conference, pursuant to ASR Local Rule 7-2.

6  **13.      Consent to a Magistrate Judge**

7           This case was originally assigned to Magistrate Judge Elizabeth D. Laporte.  On April 22,

8  2008, Defendant declined to consent to the Magistrate.  The matter was reassigned to the Honorable

9  Jeffrey S. White on April 28, 2008.  Both parties consent to a magistrate judge for settlement

10  purposes.

11  **14.      Other References**

12           The parties do not believe this case is suitable for reference to binding arbitration, a special

13  master, or the Judicial Panel.

14  **15.      Narrowing of Issues**

15           At the present time, parties have only made their initial disclosures and do not have any

16  issues that can be narrowed by agreement or motion.  As described in paragraph 8 above, the parties

17  propose to bifurcate discovery into a liability and phase and a remedy phase.

18  **16.      Expedited Schedule**

19           The parties do not believe that this is the type of case that can be handled on an expedited

20  basis with streamlined procedures.

21  **17.      Scheduling**

22           The parties agree to and propose the following discovery schedule.  The proposed dates are

23  timed to coincide with the upcoming rainy season and CSPA's intent to request and conduct up to at

24  least three wet weather site inspections:

25  May 11, 2009 – Complete initial expert disclosures on the liability phase;

26  June 8, 2009 – Complete rebuttals to expert disclosures on the liability phase;

27  July 10, 2009 – Complete all expert and non-expert discovery regarding liability;

28  September 14, 2009 – Deadline for parties to file summary judgment motions on liability.

1  As to the remedy phase, the parties propose that initiation of discovery as to remedy be scheduled to

2  begin once the Court has ruled on the parties' initial liability or dispositive motions for summary

3  judgment. Assuming a remedy phase is necessary, the parties anticipate completing the following

4  schedule:

5  January 15, 2010 – Complete initial expert disclosures on remedies;

6  February 15, 2010 - Complete rebuttals to expert disclosures regarding remedies;

7  April 15, 2010 – Complete all expert and non-expert discovery regarding remedies;

8  May 28, 2010 – Deadline for dispositive motions;

9  June 21, 2010 – Final Pretrial Conference;

10 August 16, 2010 – Trial.

11 **18.    Trial**

12         Defendant has demanded a jury trial. The parties estimate that a trial as to liability and

13 remedy would take approximately eight days.

14 **19.    Disclosure of Non-party Interested Entities or Persons**

15         CSPA and Keller Canyon have both filed their "Certification of Interested Entities or

16 Persons." CSPA did not have any interest to report. Keller Canyon certified that Allied Waste

17 Industries, Inc. is the ultimate parent company of Defendant Keller Canyon Landfill Company, and

18 has either (i) a financial interest in the subject matter in controversy or in a party to the proceeding;

19 or (ii) any other kind of interest that could be substantially affected by the outcome of the

20 proceeding. Allied Waste Industries is traded on the NYSE.

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

1  **20.   Other Matters**

2      There are no other matters to report on at this time.

3

4  Dated: June 5, 2008

5                                          Respectfully submitted,

                                           LOZEAU DRURY LLP
6

7      By: _____

8         DOUGLAS J. CHERMAK
          Attorneys for Plaintiff
9         CALIFORNIA SPORTFISHING
          PROTECTION ALLIANCE
10

11  LAW OFFICES OF THOMAS M. BRUEN

12      By: _____

13         THOMAS M. BRUEN
           Attorneys for Defendant
14         KELLER CANYON LANDFILL COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28